Mercedes-Benz Veh. Trust v Follman (2026 NY Slip Op 50030(U))

[*1]

Mercedes-Benz Veh. Trust v Follman

2026 NY Slip Op 50030(U)

Decided on January 12, 2026

Civil Court Of The City Of New York, Kings County

Waterman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 12, 2026
Civil Court of the City of New York, Kings County

Mercedes-Benz Vehicle Trust, Plaintiff(s),

againstUsher Follman aka Usher Yona Follman, Defendant(s).

Index No. CV-021881-23/KI

Plaintiff, Crane Legal Consulting, LLC by Barry Crane, Esq.DefendantSelf-Represented Defendant, Usher Follman 

Lola Waterman, J.

The instant action is for breach of contract and account stated. The complaint alleges that on September 9, 2020, Usher Follman, a/k/a Usher Yona Follman ("Defendant"), entered into a motor vehicle lease agreement with an authorized dealer, and that, upon execution of the contract, Plaintiff, Mercedes-Benz Financial Services, LLC ("Plaintiff"), extended credit to Defendant for the lease of a motor vehicle. Plaintiff alleges that Defendant breached the agreement by failing to make payments as agreed. On December 4, 2025, and December 5, 2025, a bench trial was held in which Plaintiff sought damages in the amount of $22,536.71.LIST OF EXHIBITS ADMITTEDPlaintiff's Exhibit/s:
1. Pleadings2. Pennsylvania Motor Vehicle Lease Agreement3. Credit Application4. Payment History/ Lease Termination chart5. Notice of Sale & Deficiency6. Repossession File consisting of: Lease Buyer's Agreement; PA Temporary In-Transit Registration Credentials; Copy of Limited Power of Attorney; and other delivery documents7. Copy of Defendant's Driver's License8. Defendant's Reply Affidavit submitted under Index Number 30268/2021 of New York State Supreme Court, Rockland County (Statement against interest).Defendant's Exhibit/s:
1. Statement of Judgment after Motion for Contempt in New York State Supreme Court, Rockland County - Index Number 30268/2021

 WITNESSES' TESTIMONIES

Testimony of Eric DeMarte:
On behalf of Plaintiff, Mr. Eric DeMarte, Business Manager at Tom Masano, Inc., a nonparty authorized dealer, testified that Defendant's request for a vehicle was presented through his broker, a Mr. Itzkowitz, on or about September 9, 2020. Mr. DeMarte testified that he has been employed by the dealership for the past ten (10) years; is familiar with the company's policies, procedures, and practices pertaining to vehicle sales and leasing; and has facilitated numerous sales and lease transactions during his tenure.
Mr. DeMarte explained that transactions involving a broker differ from standard lease or sale transactions in that the broker acts as the primary point of contact and provides the dealership with the necessary documentation. When a request is submitted by a broker, the dealership ensures that all required documents, including the customer's driver's license, Social Security number, and credit report, are provided. Mr. DeMarte further testified that the lease offered to Defendant for the subject vehicle was for personal use only and expressly prohibited commercial use, including renting the vehicle to others.
Mr. DeMarte continued that once the dealership receives the required documentation, the vehicle is delivered directly to the customer, and the customer is referred to Mercedes-Benz Financial Services to complete the leasing process. He testified that Defendant would not have been notified by the dealership or Mercedes-Benz Financial Services if a credit inquiry was made on Defendant's behalf. He testified that when a vehicle is delivered to the customer, the customer executes the lease application and accompanying documents using "wet ink" signatures, which are retained in accordance with state and federal regulations. Based upon his review of the dealership's file in preparation for trial, Mr. DeMarte testified that there was no deviation from customary dealership practices in this matter.
On cross-examination, Mr. DeMarte was questioned regarding the delivery of the vehicle. He testified that he was unable to confirm whether the vehicle was delivered directly to Defendant as opposed to the broker. However, consistent with Mercedes-Benz procedures and based upon the dealership file, he stated that an employee delivered the vehicle to the designated location and that, upon delivery, the required documents were presented and collected bearing Defendant's "wet ink" signatures. Mr. DeMarte further testified that the dealership does not maintain records identifying the specific employee who delivered the vehicle, as delivery personnel frequently transition to other employment.
Mr. DeMarte also stated that all communications prior to delivery occurred between the dealership and the broker, and that there was no direct communication with Defendant until delivery of the vehicle and execution of the documents. Mr. DeMarte did not know the address [*2]where the vehicle was delivered. He further testified that the Power of Attorney executed by Defendant on September 10, 2020,[FN1]
was utilized by the dealership to facilitate title and registration of the subject vehicle.
Testimony of Paul Schreck:
Mr. Paul Schreck, a Dealer Relationship Manager for Mercedes-Benz Financial Services, also testified in support of Plaintiff's claims. Mr. Schreck testified that Mercedes-Benz Financial Services is used exclusively for vehicle leasing transactions and that, in his role, he works with credit underwriting to ensure dealers' compliance with applicable state and federal regulations. He stated that Defendant's driver's license, Social Security number, and credit report were used in connection with financing the lease.
Mr. Schreck testified that the Power of Attorney, dated September 10, 2020, was not required until financing was approved and the dealership needed to complete the title and registration process. He further testified that, pursuant to the lease agreement, Defendant was required to remit monthly payments of $644.83 until the account balance reached zero. However, within five (5) months of execution of the lease agreement, Defendant ceased making payments.
Mr. Schreck testified that the account was terminated early in March 2021 and that the vehicle was sold at auction in May 2021 for $31,400.00, resulting in a deficiency balance of $22,536.71, which included recovery and sales fees.
On cross-examination, Mr. Schreck testified that Mercedes-Benz Financial Services does not independently verify a customer's income but relies on the dealership to collect and verify the income to initiate the lease process. He further testified that all payments received are applied to the designated account, regardless of the identity of the payor.
Testimony of Defendant Usher Follman:
In support of his defense, Defendant testified that he does not owe Plaintiff any monies, asserting that he was a victim of identity theft. Defendant testified that he entered into an agreement with Mr. Itzkowitz, granting him permission to use Defendant's personal information to lease a Nissan vehicle for rental purposes in exchange for a nominal fee. Defendant testified that although a Nissan vehicle was initially procured, Mr. Itzkowitz subsequently leased fourteen (14) additional vehicles using Defendant's personal information without his knowledge or consent, including the subject Mercedes-Benz vehicle.
Defendant testified that his signature on the subject lease documents was forged and that he neither received nor took possession of the subject vehicle. He further testified that the vehicle was not delivered to him and that he never saw or collected the vehicle from the address listed in the documentation. Defendant testified that he was contacted by law enforcement and informed that "his" vehicle had been involved in a crime. Upon learning this, he contacted Plaintiff to retrieve the vehicle from the police impound.
Defendant further testified that his defense is supported by a civil RICO action he commenced in the Supreme Court of Rockland County (Index No. 03020268/2021). In the RICO [*3]case,[FN2]
the court issued a decision and judgment on May 25, 2023, against Mr. Itzkowitz and others involved in the alleged fraudulent scheme.
On cross-examination, Defendant testified that he was deceived by both Aharon Itzkowitz and Moshe Yifat, named defendants in the Rockland County action. He acknowledged that while he consented to the procurement of a Nissan vehicle, he did not authorize Mr. Itzkowitz to lease any additional vehicles. Defendant testified that he first became aware of the subject leased vehicle after reviewing his "My DMV" report, and he subsequently contacted the affected companies and requested that the vehicles be repossessed.
Defendant further testified that all signatures on the subject documents were forged and that the insurance coverage for the subject vehicle was illegitimate. He stated that an individual known as "Goldie," an employee of Moshe Yifat, obtained insurance coverage without Defendant's knowledge or consent. Defendant concluded that he did not contract with Mercedes-Benz Financial Services and that Plaintiff, like Defendant, was a victim of the fraud.

FINDINGS

Breach of Contract
To prevail on a cause of action for breach of contract, a plaintiff must establish: (1) the existence of a contract; (2) plaintiff's performance under the contract; (3) defendant's breach of the contract; and (4) resulting damages. 34-06 73, LLC v Seneca Ins. Co., 39 NY3d 44, 52 (2022); All Seasons Fuels, Inc. v. Morgan Fuel & Heating Co., Inc., 156 AD3d 591, 594 (2nd Dept., 2017).
Here, Plaintiff failed to meet its burden of proof on the threshold issue of contractual assent (meeting of the minds), an essential element of its claim. See, Agosta v Fast Sys. Corp., 136 AD3d 694 (2nd Dept., 2016); Express Indus. & Terminal Corp. v. New York State DOT, 93 NY2d 584 (1999); Total Telcom Group Corp. v Kendal on Hudson, 157 AD3d 746 (2nd Dept., 2018). Although Plaintiff introduced documentary evidence purporting to reflect a motor vehicle lease agreement bearing Defendant's identifying information, along with testimony concerning customary leasing practices, Plaintiff did not establish that Defendant executed the lease agreement, authorized its execution, or otherwise assented to its terms.
Plaintiff relied in part on a Power of Attorney purportedly executed by Defendant. Upon review, however, the Power of Attorney is facially defective, as it identifies the principal and the limited purpose of the document but fails to identify any agent authorized to act on Defendant's behalf with sufficient clarity. As such, the Power of Attorney does not confer actual authority upon any third party, including Aharon Itzkowitz, nor does it provide a basis upon which Plaintiff or the dealership could reasonably rely to establish agency.
While Defendant acknowledged entering into an arrangement permitting the use of his personal identifying information to facilitate the leasing of a vehicle, Plaintiff failed to establish, through competent evidence, the scope of any such authorization or that it extended to the subject vehicle. In the absence of a valid Power of Attorney or other proof of agency, Plaintiff did not establish that any third party possessed actual or apparent authority to bind Defendant to the lease agreement at issue.
Plaintiff further failed to present testimony from any witness with personal knowledge establishing that Defendant received delivery of the vehicle or personally executed the lease and related documents. Instead, Plaintiff's witnesses testified generally as to policies and procedures, which, without more, are insufficient to establish execution or assent where those facts are disputed. This deficiency is particularly significant given Plaintiff's position at trial that the vehicle was delivered directly to Defendant himself, notwithstanding the absence of competent proof supporting that claim.
Moreover, neither party sought to implead the alleged perpetrators of the fraud into this action, despite their identities being known. In light of Defendant's testimony denying participation in the transaction, denying receipt of the vehicle statements, and denying authorization of the lease; the inconsistencies of Defendant's signatures on documents signed on September 9, 2020 (see, Plaintiff's Exhibit 6); the incomplete, altered and otherwise facially defective Power of Attorney; and the absence of competent proof to the contrary, the Court finds that Plaintiff failed to establish that Defendant was a party to the lease agreement or otherwise consented to its terms.
Accordingly, Plaintiff has not met its burden of proof on the breach of contract claim.
Account Stated
Plaintiff likewise failed to establish its cause of action for an account stated. An account stated is an agreement, express or implied, as to the correctness of an account and the balance due, arising from prior transactions between the parties. An agreement may be implied where a defendant retains account statements without objection for a reasonable period of time or makes partial payments on the account. Citibank (South Dakota), N.A. v. Keskin, 121 AD3d 635 (2nd Dept., 2014); Am. Express Centurion Bank v. Gabay, 94 AD3d 795 (2nd Dept., 2012).
While Plaintiff introduced a payment history and evidence that payments were made during the early months of the lease, Plaintiff failed to establish that Defendant received the billing statements, retained them without objection, or authorized any payments made on the account. In the absence of proof that Defendant assented to the underlying lease agreement or that a valid agency relationship existed, Plaintiff cannot impute receipt of statements or payments to Defendant.
As in Calvary SPV I, LLC v. Awumey, the evidence at best demonstrates that the lease and billing statements were issued to an individual purporting to be Defendant and associated with Defendant's address, not that Defendant himself was the contracting party or recipient of the statements. 59 Misc 3d 1223(A) (Civ. Ct., Bronx County 2018). Under these circumstances, Plaintiff failed to establish an express or implied agreement as to the correctness of the account or the balance due.
Accordingly, Plaintiff failed to meet its burden of proof on the account stated claim.
The Court makes no finding as to Defendant's credibility, as the disposition of Plaintiff's claims rests solely on Plaintiff's failure to meet its burden of proof.
Defendant's Counterclaim
To the extent Defendant seeks a counterclaim for pain and suffering, Defendant failed to present any competent evidence at trial establishing entitlement to such damages. No medical [*4]evidence, testimony, or other proof was introduced to substantiate the claim or to establish a causal connection between Plaintiff's conduct and any alleged injury. Accordingly, Defendant's counterclaim for pain and suffering is dismissed.
For all the foregoing reasons, Plaintiff has failed to meet its burden of proof, and the complaint is dismissed in its entirety.
This constitutes the Decision and Order of the Court.
Date: January 12, 2026Hon. Lola WatermanCivil Court Judge (NYC)

Footnotes

Footnote 1:It is noted that the Limited Power of Attorney, dated September 10, 2020, is blank as to the designated agent.

Footnote 2:The judgment was entered on default and sanctions grounds and was not an adjudication on the merits of the underlying fraud allegations.